**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**GREGORY MARTIN**                                                      **PETITIONER**

**No. 4:20-cv-00048 KGB/PSH**

**DEXTER PAYNE,**                                                      **RESPONDENT**
*Director, Arkansas Division of Correction*

**FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

Gregory Martin ("Martin") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 13, 2020.  He was sentenced to 156 months' imprisonment in the custody of the Arkansas Division of Correction (ADC) in June of 2018 after a Miller County jury found him guilty of aggravated robbery.  Martin filed an untimely Notice of Appeal with the trial court on June 25, 2019, and a

Motion for Belated Appeal with the Supreme Court of Arkansas on September 19, 2019.  Martin asserted, as the basis for his appeal, that his trial attorney ignored his request to  pursue a direct appeal. Ultimately, Martin's motion for a belated appeal was granted and he was allowed to proceed with his direct appeal.

On November 17, 2021, the Arkansas Court of Appeals affirmed Martin's conviction, finding no merit in his assertion that there was insufficient evidence linking him to the aggravated robbery.  See docket entry no. 19-1.  Martin did not file a Rule 37 collateral attack in the trial court.

On January 17, 2023, United States District Judge Kristine G. Baker declined to adopt an earlier recommendation from the undersigned,[1] and referred the case back for further proceedings.

Martin alleges the following claims for relief:

1.  Constitutional errors, including failure to offer a plea deal, denial of his right to confront his accuser, cruel and unusual punishment, and illegal search;

2.  Witness credibility and inconsistency;

3.  Ineffective assistance of trial counsel, including counsel's failure to file a direct appeal; and

4.  Error in dismissing a black juror from the panel for no reason.

---

[1]The undersigned had previously recommended dismissal of the petition without prejudice to allow Martin to pursue his direct appeal in state court.  See docket entry no. 18.

Respondent Dexter Payne ("Payne"), contended that the statute of limitations bars consideration of these claims and that Martin's claims were not properly before this Court due to his failure to adequately raise these claims in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny.

Because of the unusual procedural posture of the case (with the direct appeal taking place in a delayed fashion) the Court will consider Payne's procedural bar argument and address the merits of claims one and two.

*Procedural Bar*

In *Wainwright v. Sykes, supra*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court; that is, if he was aware of the ground, but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See also, Clark v. Wood*, 823 F.2d l24l, l250-5l (8th Cir. l987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. l987). The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (l986), and *Murray v. Carrier*, 477 U.S. 478 (l986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause." *Smith v. Murray*, 477 U.S. 533-34.   However, one can discern from these cases several circumstances in which cause might be found:   first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. 1 (1984); or third, if the litigant failed to receive the effective assistance of counsel.  *See Murray v. Carrier*, 477 U.S. at 488.   In addition, there is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause:   where a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.* at 496.

Liberally construing Martin's petition the Court finds claims one and two can be viewed as attacks on the sufficiency of the evidence, which was the claim advanced on direct appeal.  Accordingly, we find these claims were raised in state court and decided there.  Thus, there is no procedural bar to their consideration.

Claims three and four, however, were not raised in state court.  Claim three could have been asserted in a Rule 37 petition.  Such a petition, however, was not

filed in state court. Claim four could have been, but was not, raised on direct appeal, when the sole claim was sufficiency of the evidence.

Martin has provided no cause for his failure to advance claims three and four in state court, nor has he alleged any prejudice from the claims not being advanced and considered. As a result, the Court finds claims three and four are procedurally barred from consideration and should be dismissed on that basis.

*Sufficiency of the evidence*

The challenge to the sufficiency of the evidence was pursued in Martin's delayed direct appeal in state court. The Arkansas Court of Appeals summarized the factual background and the merits of Martin's assertions as follows:

> From the testimony presented at trial, the following relevant chain of events occurred in the early morning hour of May 9, 2017. At approximately 2:00 a.m., Jacqueline Horton, the victim, and her two children arrived at their home in Texarkana after shopping at Walmart. As Ms. Horton pulled up to her house, two men, later identified as Charod Robinson and appellant, approached her car. Charod Robinson pointed a gun at Ms. Horton and said, "You know what this is, right?" Ms. Horton told her kids to run inside the house. Both men were wearing dark-colored gloves, and the person later identified as the appellant was wearing a blue bandana over his nose and mouth. While Charod Robinson kept his gun pointed at Ms. Horton, appellant searched her car and took a cell phone, Ms. Horton's keys, and between $400 and $500 in cash. The men left on foot.

> Shortly after 2:00 a.m., Texarkana Police Officer Douglas Pearson was patrolling the neighborhood near Ms. Horton's residence. Officer Pearson testified that he was patrolling the area because there was a significant increase in the crime rate. Officer Pearson stated that he saw a man dressed in a hoodie and dark pants with his hands in his pocket walking down the street. Officer Pearson considered the man

suspicious and stopped and interviewed the man. The man identified himself as Charod Robinson, and he said that he was walking to his sister's house on Summerhill Road approximately six miles away. Officer Pearson ran Robinson's identification but the search revealed no outstanding warrants, and Robinson was allowed to leave. Robinson continued to walk, and Officer Pearson drove around the block but watched Robinson from a distance.

At nearly the same time and a couple of blocks over, at 2:19 a.m., Officer Johnathon Burkes pulled appellant over for driving a car without a license plate. Officer Dakota Easley and Officer Nathan Lavender arrived to backup Officer Burkes. Officer Burkes and two other officers searched appellant's car with appellant's consent. During the search, the officers found black cotton gloves, Charod Robinson's driver's license, several cell phones, and a blue bandana. Officer Easley recognized the name Charod Robinson as being the same name that Officer Pearson had just stopped a couple of blocks away and released.

Ms. Horton had decided to stay at a hotel because the persons who had robbed her had taken the keys to her house. As Ms. Horton was driving only a couple of blocks from her house, she saw the officers who had stopped the appellant. Ms. Horton stopped to report the aggravated robbery. While reporting the aggravated robbery, Ms. Horton pointed at appellant and stated that he sounded and looked like one of the men who had just robbed her. Accordingly, Officer Easley radioed Officer Pearson to relocate Charod Robinson. Officer Pearson stopped Robinson a second time, searched him, and found $457 in cash in his back pocket. Other officers had arrived to assist at appellant's traffic stop, and Officers Easley and Lavender drove around the block to assist Officer Pearson with Charod Robinson. Officers Easley and Lavender searched the area and found Ms. Horton's stolen keys. The officers then retraced Charod Robinson's path and found a 9mm handgun. Both appellant and Robinson were subsequently arrested for aggravated robbery.

At trial, Ms. Horton testified that during the aggravated robbery, she heard the two men talking, and she stated that they had a Californian accent. In the courtroom, she specifically identified appellant as the man who had robbed her and stated that he was the man who was

wearing the blue bandana during the aggravated robbery. Ms. Horton further identified the blue bandana, black gloves, and handgun in pictures of items recovered as objects that were used in the aggravated robbery.

After the State rested its case, appellant moved for a directed verdict. He argued as he does on appeal that the State failed to present sufficient evidence linking him to the aggravated robbery. The circuit court denied the motion, noting that "[t]here is overwhelming circumstantial evidence that the Defendant was involved in the aggravated robbery, and there has been a positive ID of Mr. Martin in court today." After the defense rested, appellant renewed his directed-verdict motion, and the circuit court again denied the motion. The jury found appellant guilty of aggravated robbery, and the circuit court sentenced appellant to thirteen years' imprisonment. This appeal followed.

## II. Sufficiency

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id*. We will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Whether the evidence excludes every other hypothesis is left to the jury to decide. Id. Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra*.

"A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs

or threatens to immediately employ physical force upon another person." Ark. Code Ann. § 5-12-102 (Repl. 2013). A person commits aggravated robbery if he or she commits robbery as defined in Arkansas Code Annotated section 5-12-102, and the person

> (1) Is armed with a deadly weapon;
> (2) Represents by word or conduct that he or she is armed with a deadly weapon; or
> (3) Inflicts or attempts to inflict death or serious physical injury upon another person.

Ark. Code Ann. § 5-12-103(a). "Serious physical injury" is defined as physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21) (Repl. 2013).

Under accomplice liability, "[a] person may commit an offense either by his or her own conduct or that of another person." Ark. Code Ann. § 5-2-401 (Repl. 2013). "A person is criminally liable for the conduct of another person if ... [t]he person is an accomplice of *6 another person in the commission of an offense[.]" Ark. Code Ann. § 5-2-402(2). A person is an accomplice of another person if, with the purpose of promoting or facilitating the commission of the offense, he or she solicits, advises, encourages, coerces, aids, agrees to aid, or attempts to aid in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(1)–(2).

When a theory of accomplice liability is implicated, we affirm the circuit court's order in a sufficiency-of-the-evidence challenge if substantial evidence shows that the defendant acted as an accomplice in the commission of the alleged offense. *Price v. State*, 2019 Ark. 323, 588 S.W.3d 1. There is no distinction between principals on the one hand and accomplices on the other, insofar as criminal liability is concerned. *Id*. When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of all. *Id*. One cannot disclaim accomplice liability simply because he or she did not personally take part in every act that went to make up the crime as a whole. *Id*. Relevant factors in determining the connection of an alleged accomplice to a crime include the presence of the accused in proximity to a crime, the opportunity to commit the crime, and an association with a person involved in the crime in a

8

manner suggestive of joint participation. *Williams v. State*, 2017 Ark. 287, 528 S.W.3d 839. Finally, our supreme court has held that concert of action to commit an unlawful act may be shown by circumstantial evidence, without direct proof of a conspiracy agreement. *Id.*

Appellant argues that there is insufficient evidence linking him to the aggravated robbery. He more specifically alleges that there was no scientific evidence connecting him to the crime; Ms. Horton's testimony at trial conflicted with statements she made to law enforcement before trial; the testimony of the investigating officer was inconsistent; there was nothing presented at trial showing that the vehicle identification number was associated with Robinson; and the search of the vehicle appellant was driving did not produce any evidence tying appellant to the aggravated robbery. Therefore, appellant concludes, because there is a lack of evidence connecting him to the aggravated robbery, we should reverse and dismiss his conviction. We disagree.

Ms. Horton positively identified appellant in the courtroom as one of the two men who had committed the aggravated robbery. Ms. Horton testified that appellant was one of the two men who robbed her at gunpoint. She detailed how appellant's accomplice, Charod Robinson, pointed a gun at her while the appellant took over $400 in cash, a cell phone, and her keys. When a witness makes a positive identification of a suspect, any challenge to the reliability of the identification becomes a matter of credibility for the fact-finder to determine. *Turner v. State*, 2018 Ark. App. 5, 538 S.W.3d 227. Further, Ms. Horton testified that the two men who robbed her wore black gloves and that one of the men wore a blue bandana. Black gloves and a blue bandana were found in appellant's car during the search. Further, Ms. Horton's keys were found near where Charod Robinson was stopped, and a 9mm handgun was found along the path from Ms. Horton's residence. The jury is free to believe all or part of a witness's testimony, and we do not weigh the credibility of witnesses on appeal, since that is a job for the fact-finder and not the appellate court. *Id.* A fact-finder's decision will not be disturbed on appeal when there is substantial evidence to support it. *Stipes v. State*, 315 Ark. 719, 870 S.W.2d 388 (1994). Moreover, our supreme court "has consistently

9

held that unequivocal testimony identifying the appellant as the culprit is sufficient to sustain a conviction." *Id.* at 721, 870 S.W.2d at 389. Viewing this evidence in the light most favorable to the jury's verdict, the State provided sufficient evidence to support the appellant's conviction for aggravated robbery. Accordingly, we affirm.

*Martin v. State*, 2021 Ark. App. 463, 2–8 (2021).

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Here, Martin does not plead or prove that the Arkansas court's finding of sufficient evidence supporting his convictions was contrary to, or involved an unreasonable application of, clearly established federal law. Although the state Supreme Court did not specifically cite federal law, that failure is not problematic as neither the court's reasoning nor result contradicts federal law. *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). The applicable federal law requires the court to ask if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) [emphasis in original]. The Arkansas Court of

Appeals' ruling that Martin's conviction was supported by sufficient evidence is consistent with, and a reasonable application of the *Jackson v. Virginia* standard.

Martin has also not shown that the adjudication of the claim by the Arkansas appellate court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Martin challenges the credibility of witness Horton. However, her positive identification of Martin in the courtroom and the physical evidence (e.g., black gloves and blue bandana) strongly supported her testimony. The credibility of witnesses was a jury question, and Martin's insistence that an error occurred in this regard does not make it so. The jury's rejection of his argument about Horton's credibility and the other evidence to support his conviction was not an unreasonable determination of the facts in view of the trial evidence.[2]

Having carefully reviewed the trial record, the Court finds that the evidence meets and exceeds the requirements of *Jackson v. Virginia*. There is no merit in Martin's challenge to the sufficiency of the evidence.

---

[2]When denying Martin's motion for directed verdict after the State's presentation of its case, the trial judge aptly noted there was "overwhelming circumstantial evidence that the Defendant was involved in this aggravated robbery, and there's also been the positive ID by the victim of Mr. Martin here in court today." Docket entry no. 21-1, page 265.

11

For the reasons stated herein, the Court finds that Martin fails to demonstrate merit in his claims.  Accordingly, it recommends that the petition for writ of habeas corpus be denied and the case dismissed with prejudice.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, the Court recommend the certificate of appealability be denied.

IT IS SO ORDERED this 3rd day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE